## Case No. 17,841.

### WILSON v. The TRUXILLO.

[N. Y. Times, Sept. 18, 1852.]

District Court, S. D. New York. 1852.

SALE OF CHATTELS—PASSING OF TITLE—FAILURE TO DELIVER.

[The seller of merchandise agreed with the vendee to deliver it on board a brig lying at pier No. 9, North river, but by mistake of the carman it was delivered to another brig lying at pier No. 9, East river, and a receipt for the merchandise was signed by the master of the latter brig, which sailed before the mistake was discovered. The seller then delivered similar merchandise on the other brig in fulfillment of his contract. Held, that the title to the merchandise shipped on the wrong brig remained in the vendor, so that he could sue such brig for the value thereof.]

The libellant, Joseph Wilson, sold twenty-five cases of friction matches to John P. Beauville, and agreed with Beauville to deliver them on board of the brig Hector, at pier No. 9, North river, for $187.50; and to carry out his agreement Wilson employed Vernon McGoun, a carman, to make the delivery of the matches according to contract, and gave orders accordingly. The carman took the matches for that purpose, and at the same time he was furnished by Wilson with a blank receipt for the mate of the Hector to sign, and return when executed. On the face of this receipt it was specified that the twenty-five cases of matches were received of John P. Beauville, to be carried or shipped to Matanzas; and with this blank receipt and the twenty-five cases, the carman Vernon McGoun, left the store of Joseph Wilson—as Wilson supposed—for pier No. 9, North river; but, misunderstanding the order of Wilson, the carman made his way in an opposite direction, and brought up at pier No. 9, East river, instead of No. 9, North river, where lay the brig Truxillo, ready for sea; and the

man in the care of this brig supposed to be the mate, and acting as such, received from McGoun these twenty-five cases of matches on board the brig Truxillo, destined to St. Domingo, and not to Matanzas. And having received the twenty-five cases of matches on board the Truxillo, this supposed mate thinking that the cases were for his ship, signed the receipt; and the carman, supposing all to be right, took the receipt back to Wilson, and he, again, believing that all was right, did not examine the receipt. It was a singular fact, that the two brigs should be sailing about the same day, to the West Indies—one from pier 9, North river, and the other from pier No. 9, East river; and it was equally singular, that the carman should have misunderstood his orders, and yet found at No. 9, East river, a brig ready to receive his load for the West Indies, and ready to receipt for them, as the brig Hector would have done had the delivery been there.

These admitted facts present a case founded in mistake—a case, each step of its progress, a mistake also, and all parties remain in ignorance of the real condition of things, until the brig Truxillo sailed from the port of New York. Then it was that the purchaser of the matches discovered that there had been no delivery of matches for him on board the Hector, and giving notice of that failure to Wilson, the seller, Wilson immediately, in compliance with his contract with John Beauville, sent twenty-five other cases of matches on board the Hector, still remaining at pier No. 9, North river. This last act of Wilson was received as an entire fulfilment of his contract of sale, and J. P. Beauville had the twenty-five cases shipped to Matanzas, in the Hector, as was originally agreed, and in due time. Wilson did not claim that the delivery of the first matches, at No. 9, East river, was a fulfillment of his contract, nor could he claim that such a delivery was available to him. It follows, from these facts, that the property in the first twenty-five cases never passed to John P. Beauville, but remained in Wilson as if they had never passed out of his hands. The delivery of property by the mistake of all concerned can never be construed into a delivery in fact or in law, and the right of property remains in the original owner. In this case Wilson is that owner, and he now brings this suit to recover its value. The defence rests upon the idea that the libellant holds the receipt of the mate of the Truxillo in the name of John P. Beauville, and, therefore, this action should have been in the name of John P. Beauville instead of Joseph Wilson. And secondly, that this receipt being written evidence of the contract, cannot be contradicted or explained by parole. In short, that it is conclusive, and the respondents are alone

answerable to John P. Beauville on that receipt. In reply to this defence the libellant proceeds to show that as soon as these mistakes were made known to him, he called on Mr. Chamberlain, one of the owners of the brig Truxillo, she then having proceeded to sea, and explained to him the circumstances which had placed on board the Truxillo these twenty-five cases of matches. And thereupon the owner, Mr. Chamberlain admitted that the goods were on board his brig, that he did not until that time know the owner, and further said to Wilson, that on the return of the brig, he would settle for the goods; and McGoun testified that he was present at the same interview, and remembers that Chamberlain said to Wilson that the goods would be sold at the market price, and that he would pay to Wilson what the goods brought there. It was in evidence that one case was sold at Jeremie, and the residue left for sale at different ports in the West Indies, and that before suit commenced libellant has made demand of the owners of the Truxillo. The respondents urge in their defence, that they are liable to the person named in the receipt and when he shall call for the money they are ready to respond to that claim. To sustain the defence, counsel for the defendants quote 3 Phil. Ev. 1,466, 1,469, 1,440, and Hill's Notes.

THE COURT (JUDSON, District Judge) is of the opinion that the right of property in these goods never passed from Wilson to John P. Beauville; there was never any delivery to him of these twenty-five cases; that when on board the Truxillo, by mistake of the carman, the right of property still remained in Wilson; and that as a necessary consequence, this action is maintainable against the owners of the brig Truxillo, and constitute a lien on the brig. The facts of the case bear a strong resemblance to that class of cases where, at the common law, an action of trover might be maintained. The goods went out of the hands of Wilson by mistake,—tantamount to losing them; they came into the possession of the respondents by another mistake,—tantamount to finding; they have been demanded and payment refused. This would be evidence of conversion to an act of trover. By the admiralty law, the same equity prevails and compels payment for the goods thus received and disposed of by the respondents. The receipt, upon which the defence rests, having been executed in the manner above stated, imposes no obligation upon any one, and is laid out of the case. The value of the goods thus in the possession of the defendant having been ascertained, there will be no necessity of a reference. The decree will be for $197.42, including interest.